SEALED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2025 MAY 15 PM01 51
CAROL L. MICHEL, CLERK

| | |
|---|---|
| **ATLANTIC OCEANIC LLC,** | **CIVIL ACTION** |
| **V.** | **NO:** 25- 974 |
| **HF OFFSHORE SERVICES MEXICO SAPI DE CV, HF HUNTER SHIPPING PTE. LTD., AND HF OFFSHORE TOWING SAPI DE CV,** | **JUDGE:** SECT. D MAG. 3 |
| | **MAGISTRATE JUDGE:** |

**VERIFIED COMPLAINT**

Plaintiff, Atlantic Oceanic LLC ("Plaintiff"), by and through its attorneys, Kean Miller, LLP, files this Verified Complaint against defendants HF Offshore Services Mexico SAPI de CV ("HF Mexico"), defendant HF Hunter Shipping Pte. Ltd. ("HF Hunter"), and defendant HF Offshore Towing SAPI de CV ("HF Towing") (collectively, "Defendants"), and respectfully alleges and pleads the following:

**JURISDICTION AND VENUE**

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This Court has admiralty jurisdiction under 28 U.S.C. § 1333 and Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Supplemental Rule B").

2. Venue is proper in this District because there is, or will be during the pendency of this action, property of one or more of the Defendants subject to attachment under the provisions of Supplemental Rule B within or moving through this District in the form of the *M/V HF HUNTER* (IMO #9269506) (the "Vessel").

✓ Fee 405 CC
Process
X Dktd
CtRmDep
Doc. No.

## THE PARTIES

3. Plaintiff Atlantic is an U.S. entity, with its principal place of business located 174 Union St., New Bedford MA 02740 USA. Plaintiff owns and/or operates a number of offshore supply vessels, including the *M/V ATLANTIC TONJER*.

4. Defendant HF Mexico is a Mexican entity with its principal place of business at Av. Aviacion 245, Petrolera, 24179 Ciudad del Carmen, Camp., Mexico. HF Mexico is a maritime services company in the field of marine, transportation, installation, decommissioning, salvage and deep-sea technologies. HF Mexico owns, controls and operates a fleet of vessels, including the Vessel, and also charters vessels from third parties, like Plaintiff, for work on its projects.

5. Defendant HF Hunter is an foreign corporate entity with its registered office at 4 Battery Road, #25-01, Bank of China Building, Singapore 049908, and its principal place of business at Av. Aviacion 245, Petrolera, 24179 Ciudad del Carmen, Camp., Mexico. HF Hunter was incorporated by HF Mexico as a special purpose, single asset, vessel owning entity. HF Hunter is the current registered owner of the Vessel.

6. Defendant HF Towing is a foreign entity within the HF family of entities, with its registered office at 2 Av. Aviacion 245, Petrolera, 24179 Ciudad del Carmen, Camp., Mexico.

## INTRODUCTION

7. Plaintiff seeks in this action the attachment of the Vessel pursuant to Supplemental Rule B and the Federal Arbitration Act, 9 U.S.C. § 8, in order to obtain jurisdiction over the Defendants, and as security for Plaintiff's maritime claims, to recognize, confirm, and enforce certain foreign arbitration awards against defendant HF Mexico, which awards are also enforceable against defendants HF Towing and HF Hunter – by principles of veil-piercing, alter ego, common ownership, or similar theories of liability – as well as defendant HF Mexico.

8. Plaintiff originally filed its Verified Complaint on March 20, 2025, in the United States District Court for the Southern District of Mississippi (C.A. No 1:25cv77TBM-RPM) (the "Mississippi District Court") seeking attachment of the Vessel on its arrival in the Port of Pascagoula. On Plaintiff's Verified Complaint, the Mississippi District Court issued its Order Directing Issuance of the Process of Attachment and Garnishment, Rule B(3)(a). However, shortly after filing in the ECM system and immediately before the Vessel's arrival in Pascagoula, Mississippi, the Vessel diverted to the Port of Port Arthur, Texas.

9. Plaintiff subsequently filed its Verified Complaint on March 26, 2025, in the United States District Court for the Eastern District of Texas (C.A. No 1:25-cv-00144) (the "EDTex Court") seeking attachment of the Vessel on its arrival in the Port of Port Arthur, Texas. On Plaintiff's Verified Complaint, the EDTex Court issued its Order Directing Issuance of the Process of Attachment and Garnishment, Rule B(3)(a). However, shortly after filing in the ECM system (despite using that Court's sealing process) and immediately before the Vessel's anticipated arrival in the Port of Port Arthur, Texas, the Vessel once again held offshore and did not enter the Port of Port Arthur, Texas.

10. On or about May 8, 2025, AIS vessel tracking information revealed that the Vessel was enroute to Morgan City with an estimated arrival of May 15, 2025. The Vessel then changed course and is anticipated to be in Fourchon on or about May 15, 2025 or shortly thereafter.

11. Supplemental Rule B provides for the attachment of a defendant's property within the district when the defendant cannot be found within the district. A maritime attachment under Supplemental Rule B is available whenever the plaintiff has an *in personam* claim against the defendant which is cognizable in admiralty. The underlying purposes of a Supplemental Rule B maritime attachment is (1) that the attachment provides a means to assure satisfaction if a suit is

successful (i.e., security for a plaintiff's maritime claim against the defendant), and (2) to insure a defendant's appearance in an action, as an aspect of attachment inextricably linked to a plaintiff's substantive right to recover. Furthermore, where the basis of a cause of action is in admiralty, the Federal Arbitration Act, 9 U.S.C. § 8, permits the use of Supplemental Rule B (as the usual procedural means for obtaining a seizure of a vessel or other property in admiralty proceedings) as a means for obtaining jurisdiction over a defendant for the purposes of obtaining security for, and enforcing, foreign arbitration awards.

12. As will be described in more detail below, Plaintiff has asserted maritime claims and obtained monetary arbitration awards (in the current collective amount of $12,335,327.52) against HF Mexico in an arbitration in London related to HF Mexico's breach of a time charter party agreement with Plaintiff for the charter of Plaintiff's vessel, the *M/V ATLANTIC TONJER* (the "London Arbitration").

13. HF Towing and HF Hunter are not directly parties to the London Arbitration or the time charter party agreement under which Plaintiff's maritime claims against HF Mexico arise. However, as described below, HF Towing and HF Hunter are dominated and controlled by, and are the alter egos of, HF Mexico. Accordingly, Plaintiff's maritime claims and the London Arbitration awards issued against HF Mexico can be asserted and enforced against HF Towing and HF Hunter equally. Hence, property belonging to or owned by HF Towing and HF Hunter likewise are subject to attachment pursuant to Supplemental Rule B as security for Plaintiff's maritime claims and the enforcement of the London Arbitration awards issued against defendant HF Mexico.

14. The Vessel was purchased by, and is owned by, HF Mexico. However, after breaching its time charter party agreement with Plaintiff, and during the pendency of the London

Arbitration, HF Mexico performed a paper, fraudulent transfer of ownership of the Vessel to its alter egos, HF Towing and then to HF Hunter, for the purpose of concealing the asset from the enforcement of any monetary awards issued against it in the London Arbitration. Accordingly, as alter egos of each other, the Vessel is the property of each of the Defendants for the purposes of Supplemental Rule B.

15. As the Defendants cannot be found within this District, the property of the Defendants presently within the District (or expected to be in the District during the pendency of this action), including the Vessel, may be attached and garnished pursuant to Supplemental Rule B in an amount sufficient to answer Plaintiff's claim and satisfy the awards and any potential future awards issued against HF Mexico in the London Arbitration, currently calculated in the amount of $12,335,327.52.

## FACTS

### A. THE PARTIES' UNDERLYING DISPUTE

16. In January 2024, Plaintiff was approached by brokers Arctic Offshore, on behalf of HF Mexico to time charter one of Plaintiff's offshore supply vessels for services in support of HF Mexico's purported client, ENI Mexico ("ENI"). The duration for the proposed time charter was to be approximately six months firm with a one-month option. Plaintiff responded with a charter quotation identifying the client as ENI/Harran, and a letter of intent was executed between Plaintiff's affiliated company Atlantic Oceanic (UK) Ltd. and Harren & Partner Mexico ("Harren"). HF Mexico's stated purpose for the time charter was to secure a vessel for ENI's staff in the Gulf of Mexico.

17. During the charter negotiations, HF Mexico proposed that the Charter name HF Mexico as the charterers of the *M/V ATLANTIC TONJER* rather than by a company in the Harren group. Plaintiff raised concerns about HF Mexico's financial condition (as it appeared to be a

relatively new company) and ability to pay hire and other potential liabilities under the proposed time charter party agreement. HF Mexico provided Plaintiff with assurances in the form of representations that it was previously part of Harren's Mexican affiliate, that HF Mexico owned and operated its own fleet of vessels, and that HF Mexico had secured a firm six-month contract with ENI which would provide funds for HF Mexico to pay hire to Plaintiff under the contemplated time charter party agreement for Plaintiff's vessel.

18. Based on HF Mexico's representations and assurances, Plaintiff (as owners) and HF Mexico (as charterers) entered into a the time charter of the *M/V ATLANTIC TONJER* on the SUPPLYTIME 2017 Form, as amended between the parties, dated March 24, 2024 (the "Charter"). A true and correct copy of the Charter is annexed as Exhibit 1.[1]

19. Pursuant to the Charter, Plaintiff chartered the *M/V ATLANTIC TONJER* to the HF Mexico for a minimum of six (6) months with a charter hire rate of USD 54,000 per day. Exhibit 1 (Charter), Part I, Boxes 9, 20.

20. On April 21, 2024, Plaintiff delivered the *M/V ATLANTIC TONJER* to HF Mexico at the anchorage area near Ciudad del Carmen, Mexico, as per the delivery requirements under the Charter.

21. In order to facilitate the delivery of the *M/V ATLANTIC TONJER* in Mexico, the *M/V ATLANTIC TONJER* was imported into Mexico under a temporary import permit acquired by HF Mexico from the Mexican Customs authorities.

---

[1] Clause 37(a) of the Charterparty contains the following arbitration clause:

> This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof. The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association ("LMAA") Terms current at the time when the arbitration proceedings are commenced.

22. In the months following the delivery of the *M/V ATLANTIC TONJER*, it became apparent that there would be no employment for the vessel with ENI as had been represented by HF Mexico. Commencing in June 2024, HF Mexico failed to pay hire as required under the Charter, and ultimately HF Mexico repudiated and wrongfully terminated the Charter on August 19, 2024.

23. Following HF Mexico's wrongful termination of the Charter, HF Mexico refused to pay demobilization costs required under the Charter, and further refused to take the appropriate actions required under Mexican Customs Laws to clear the *M/V ATLANTIC TONJER* for departure from Mexican waters, effectively preventing the *M/V ATLANTIC TONJER* from obtaining clearance to depart the port.

24. Due to these actions by HF Mexico, Plaintiff was deprived of the opportunity to secure employment for the *M/V ATLANTIC TONJER* at market rates, and Plaintiff incurred delays, and additional costs and damages.

**B. THE LONDON ARBITRATION**

25. On August 21, 2024, Plaintiff commenced the London Arbitration against HF Mexico in London pursuant to the arbitration clause in the Charter.

26. On September 18, 2024, Plaintiff submitted its claims in the London Arbitration, including Plaintiff's claims for (1) repudiatory breach of the Charterparty; (2) damages for actual breach of the Charterparty; (3) unpaid hire and other sums due under the Charterparty; (4) damages for wrongful detention; (5) damages for misrepresentation; and (6) interest, costs, and attorneys' fees.

27. Plaintiff also sought in the London Arbitration injunctive relief requiring HF Mexico to take all reasonable steps as required under Mexican law to clear the customs issues related to the delivery of the *M/V ATLANTIC TONJER* in Mexican waters.

28. Starting in August 2024, Plaintiff provided notice to HF Mexico of the London Arbitration (1) through the required notice procedures under the Charter, including by email to HF Mexico's Captain Heiko Felderhoff (2) by physical service of Plaintiff's appointment of arbitrator to HF Mexico's offices, and (3) upon the request of the appointed arbitrator, by further email service to several HF Mexico employees and officers with electronic delivery receipts. The messages were received by HF Mexico, which messages HF Mexico ignored. Despite receiving ample notice of the London Arbitration and Plaintiff's claims asserted therein, HF Mexico did not appear in the London Arbitration.

29. On November 26, 2024, the London Arbitration tribunal issued its first partial final award in favor of Owners (the "First Partial Final Award"). A true and correct copy of the First Partial Final Award is attached hereto as Exhibit 2.

30. The First Partial Final Award granted Plaintiff's claim for hire in the amount of USD 463,643.92. and for interest in the amount of USD 39,135.51, and found that Plaintiff is entitled to post award interest at the rate of 2% per month, totaling USD 502,779.43 as of the date of this Verified Complaint. Exhibit 2, at 13.

31. The First Partial Final Award also ordered HF Mexico to instruct its local customs broker (or other individuals) to cooperate in obtaining paperwork to cancel the Temporary Import Permit in Mexico pursuant to which the *M/V ATLANTIC TONJER* had been imported to Mexico. Exhibit 2, at 14.

32. The First Partial Final Award also awarded Plaintiff legal costs related to the London Arbitration in an amount to be determined, but estimated as of the date of this Verified Complaint to be USD 150,000. Exhibit 2, at 14.

33. After the issuance of the First Partial Final Award, HF Mexico continued to be unresponsive in the London Arbitration and failed to appear for scheduled hearings.

34. On February 10, 2025, the London Arbitration tribunal issued a second partial final award in favor of Plaintiff (the "Second Partial Final Award"). A true and correct copy of the Second Partial Final Award is attached hereto as Exhibit 3.

35. In the Second Partial Final Award, Plaintiff was awarded (1) demobilization fees pursuant to the Charter in the amount of USD 1,100,000; (2) damages for HF Mexico's repudiatory breach in the amount of USD 3,513,297.38; (3) damages for HF Mexico's breach of the Charter in the amount of USD 4,858,386.22; and post award interest at the rate of 4% per annum, to be compounded quarterly. Exhibit 3, at 16.

36. Plaintiff was also awarded declaratory relief that HF Mexico's employees and officers, including Captain Felderhoff, Mr. Hammer, and Captain Mihaljevic fraudulently misrepresented that a contract with ENI had been secured prior to entering into the Charter. Exhibit 3, at 17.

37. The quantum of damages awarded Plaintiff in the First and Second Partial Final Awards calculated as of the date of this Verified Complaint, inclusive of interest and attorneys' fees and costs, is approximately USD 10,478,953.21. Attached here to as Exhibit 4 is Plaintiff's computation of amounts awarded under the First and Second Partial Final Awards.

38. Furthermore, Plaintiff's claim against HF Mexico for additional damages related to the breach of the Charter in the amount of approximately USD 2,000,000 remains pending in the London Arbitration.

## C. DEFENDANT HF MEXICO'S EFFORTS TO CONCEAL ITS ASSETS FROM ENFORCEMENT OF THE LONDON ARBITRATION AWARDS BY FRAUDULENTLY TRANSFERRING REGISTERED OWNERSHIP TO SHELL COMPANIES

39. Captain Heiko Felderhoff acquired HF Mexico and other HF entities and physical assets, including the Vessel, as part of a buy-out from Harren negotiated in early 2024.

40. Capt. Heiko Felderhoff is the Managing Director of HF Mexico. In order to induce Plaintiff into entering the Charter, Capt. Felderhoff and other employees and officers of HF Mexico represented to the Plaintiff during Charter negotiations that HF Mexico owned vessels and had an existing contract with ENI as evidence of its financial reliability.

41. During the term of the Charter, on or about July 2024, HF Mexico purchased the Vessel from Seabulk to serve in its offshore supply vessel fleet.

42. Upon information and belief, either

(a) because it had fraudulently induced Plaintiff to enter into the Charter and was seeking to fraudulently ringfence its assets from subsequent liability; or

(b) because it already had breached the Charter with Plaintiff by failing to pay hire, and having realized that Plaintiff had commenced the London Arbitration;

HF Mexico fraudulently conveyed ownership of the Vessel to defendant HF Towing for nominal or no value in an attempt to shield the Vessel from Plaintiff's anticipated enforcement of any eventual awards for monetary damages to be issued against HF Mexico in the London Arbitration. During this time, HF Mexico identified HF Towing as the owner of the Vessel in its marketing materials for the Vessel. Attached hereto as Exhibit 5 is a true and correct copy of a marketing

brochure for the Vessel believed to be circulated by HF Mexico to potential clients during the summer of 2024.

43. Upon information and belief, after breaching the Charter with Plaintiff, and having realized that arbitration under the Charter was imminent, HF Mexico caused the incorporation of defendant HF Hunter on July 17, 2024, for the sole purpose to act as a special purpose, single asset, vessel owning entity with the intention of transferring ownership of the Vessel to HF Hunter in an attempt to further shield the Vessel from the enforcement of any eventual awards for monetary damages issued against HF Mexico in the London Arbitration. Attached hereto as Exhibit 6 is a true and correct copy of the Bizfile Business Profile of Hunter Shipping Pte. Ltd. showing the dated of incorporation and listing Capt. Felderhoff as an officer and director.

44. On or about September 11, 2024, after having received formal notice of the London Arbitration and Plaintiff's claims asserted therein, and after HF Mexico decided not to appear in the London Arbitration, HF Mexico caused the transfer of the Vessel to HF Hunter for nominal or no value in a further attempt to shield the Vessel from the enforcement of any eventual awards for monetary damages issued against HF Mexico in the London Arbitration. Attached hereto as Exhibit 7 is an Equasis Report for the Vessel, which reflects HF Hunter becoming the "registered owner" of the Vessel on September 11, 2024. As can be seen by review of Exhibit 7, the Equasis Report lists HF Hunter's business address as "c/o HF Mexico" and reciting HF Mexico's business address.

45. Notwithstanding HF Mexico's attempts to transfer ownership of the Vessel to its shell corporations, HF Mexico remains the commercial operator and manager of the Vessel, and – tellingly – is the only entity listed in the "Owner" portion of DNV class documents as the ISM/DOC holder on classification documentation, and continues to operate the Vessel for its own purposes and profit out of its own physical business address in Mexico. Attached hereto as Exhibit 8 is a true and correct copy of DNV class documents for the Vessel showing HF Mexico as the ISM/DOC holder.

46. Upon information and belief, while HF Hunter is currently the purported registered owner of the Vessel, HF Mexico is still as of the date of this Verified Complaint the actual, and beneficial, owner of the Vessel.

## D. RELATED ACTIONS

47. In February 2024, shortly after the issuance of the Second Partial Final Award, Plaintiff commenced a similar action against HF Mexico in Malta seeking the arrest of another one of HF Mexico's vessels (the *M/V TRAPICHE EMERALD*) as security to enforce the London Arbitration awards (styled *Atlantic Oceanic LLC* v. *The Vessel M/V TRAPICHE EMERALD*, et al., Arrest No. 450/25MB) (the "Maltese Action"). As with the Vessel that is the subject of this action, the *M/V TRAPICHE EMERALD* was purchased by HF Mexico in 2024. After the London Arbitration had commenced, however, HF Mexico incorporated another single asset, vessel owning entity, Rolandys Ltd (BVI) ("Rolandys") to act as the registered owner of the *M/V TRAPICHE EMERALD* and reflag the vessel in furtherance of HF Mexico's efforts to shield its assets from the enforcement of the London Arbitration awards.

48. The Maltese court ordered the arrest of the *M/V TRAPICHE EMERALD*, which arrest was effected on or about Monday, March 17, 2025. The *M/V TRAPICHE EMERALD* remains under arrest in Maltese waters as of the date of this Verified Complaint. HF Mexico has denied any ownership interest in the *M/V TRAPICHE EMERALD*, however, and Rolandys (the purported registered owner of the *M/V TRAPICHE EMERALD*) to date has refused to post the required security to arrange for the release of the *M/V TRAPICHE EMERALD*. Counsel purportedly representing the bareboat charterers of the *M/V TRAPICHE EMERALD* have contacted Plaintiff's Maltese counsel and have claimed that Plaintiff's arrest in the Maltese Action is erroneous and actions will be taken to oppose that arrest. Hence, Plaintiff's maritime claims against HF Mexico and the London Arbitration awards remain unenforced and unsecured.

49. Moreover, HF Mexico and the bareboat charterers of the *M/V TRAPICHE EMERALD* – apparently with the aid of Rolandys – have produced documents in the Maltese Action further evidencing HF Mexico's fraudulent transfer and conveyances of the *M/V TRAPICHE EMERALD* to Rolandys in a further attempt to shield its assets from the enforcement of the London Arbitration Awards, including flag state and other industry documents showing the transfer of registered owner status to Rolandys during the London Arbitration and that the *M/V TRAPICHE EMERALD* was re-flagged immediately after the issuance of the Second Partial Final Award in the London Arbitration. Other documents produced in the Maltese Action further evidence HF Mexico's actual management and control of the *M/V TRAPICHE EMERALD*, including a bogus bareboat charter party agreement between its shell companies dated days after the issuance of the Second Partial Final Award generated in an attempt to create another layer between HF Mexico's actual control and ownership interest in the *M/V TRAPICHE EMERALD*.

HF Mexico and Rolandys, however, have been unable to produce any documents in the Maltese Action evidencing an actual sale of the vessel to Rolandys for value.

50. On or about February 25, 2025, Plaintiff commenced a proceeding in the U.S. District Court for the Southern District of Texas, styled *Atlantic Oceanic, LLC v. HF Offshore Services Mexico SAPI de CV*, Civ. Act. No. 4:25-cv-0829, seeking to have that court recognize, confirm, and enforce the First Partial Arbitration Award and Second Partial Arbitration Award issued in the London Arbitration. Plaintiff has not yet been able to service HF Mexico with process in connection with that proceeding.

51. As mentioned above in Paragraphs 8 and 9, Plaintiff originally filed this Verified Complaint in both the Mississippi District Court and the EDTex Court seeking attachment of the Vessel on its arrival in ports in those districts. Both federal courts issued orders directing the issuance of a Writ of Attachment under Rule B(3)(a). In both cases, however, the Vessel diverted from those apparent intended ports.

52. Defendants have filed motion papers in the Mississippi District Court in which they specifically acknowledge avoiding the process of the Mississippi District Court once becoming aware of the commencement of Plaintiff's Rule B action.

## ALTER-EGO LIABILITY

53. Plaintiff repeats and re-states each of the allegations set forth in Paragraphs 1-51 above with the same force and effect as if set forth at length herein.

54. In addition to HF Mexico's fraudulent misrepresentations concerning its purported contract with ENI that it has already been held liable for in the London Arbitration, HF Mexico also made representations concerning its financial condition in order to induce Plaintiff into the Charter, including HF Mexico's representations that it owns and operates vessels the value of



#518368828_v3

which could be liquidated or seized to satisfy any claims that may arise for HF Mexico's breach of the Charter.

55. After breaching and/or wrongfully terminating the Charter, HF Mexico used defendant HF Towing to transfer ownership of the Vessel for nominal or no value for the purpose of shielding the Vessel from Plaintiff's enforcement of any future arbitration award for monetary damages against HF Mexico.

56. After having breached the Charter, HF Mexico formed HF Hunter for the purpose of transferring ownership of the Vessel to HF Hunter for nominal or no value in furtherance of its efforts to shield the Vessel from any liability arising from HF Mexico's breach of the Charter.

57. After the commencement of the London Arbitration and after receiving notice of Plaintiff's claims against HF Mexico asserted therein, HF Mexico orchestrated the transfer of ownership of the Vessel to HF Hunter without value (or for nominal value) to hinder and frustrate the enforcement of any arbitration award issued in the London Arbitration for monetary damages against HF Mexico.

58. In this way, HF Mexico dominated and controlled HF Towing and/or HF Hunter, using defendants HF Towing and/or HF Hunter to perpetrate a fraud, wrongdoing, or injustice upon Plaintiff. HF Mexico exercises dominion and control over defendants HF Towing and HF Hunter in various other ways as well.

59. Upon information and belief, Defendants have common and overlapping stock ownership, and the principals, officers and directors that control HF Mexico similarly control HF Towing and HF Hunter. HF Hunter's officers include Capt. Heiko Felderhoff, who is also an officer of HF Mexico and negotiated the Charter on behalf of HF Mexico. HF Hunter's shareholders include HF Towing, which entity is also controled by Capt. Felderhoff and HF

Mexico. *See* Exhibit 6, HF Hunter Business Profile.

60. Upon information and belief, HF Hunter has no employees, no capital, and no business operations other than to appear on paper as the registered owner of the Vessel in order to shield and conceal HF Mexico's ownership interest in the Vessel from Plaintiff and HF Mexico's other creditors. *See* Exhibit 6, Business Profile of Hunter.

61. Defendants all use the same corporate offices. HF Mexico is located at Aviacion ave. Platino Building, number 245 3rd floor, Petrolera Colony, Zip Code 24179 Ciudad del Carmen, Campeche, Mexico, which office is used by numerous HF Mexico controlled entities, including HF Towing and HF Hunter. While HF Hunter, the purported registered owner of the Vessel, has its registered "office" at 4 Battery Road, #25-01, Bank of China Building, Singapore 049908, documents show that it uses HF Mexico's address as its bussiness address. Although titularly incorporated in Singapore, HF Hunter does not operate out of Singapore, but rather, as evidenced by the documents showing ownership and management of the Vessel, HF Mexico continues to manage and operate the Vessel from its Mexico offices. *See* Exhibit 8, DNV Class records; *see also* Exhibit 7, Equasis Report. Class documentation for the Vessel further indicates that HF Mexico is the ISM/DOC holder and operator of the Vessel, and other business records obtained by Plaintiff indicate HF Hunter's business address listed as "c/o HF Mexico." *Id.*

62. Upon information and belief, HF Towing and HF Hunter have no independent source of income and are fully financed and supported by HF Mexico, including HF Mexico's fraudulent conveyance of ownership of the Vessel to HF Towing and HF Hunter for nominal or no value.

63. HF Mexico uses HF Hunter's sole asset, the Vessel, as its own for its own benefit. Even after HF Mexico transferred ownership of the Vessel to HF Towing and then to HF Hunter

during the pendency of the London Arbitration, HF Mexico remains the commercial operator and manager of the Vessel and uses the Vessel for its own purposes and profits. Documents and records showing HF Hunter or HF Towing as registered owners of the Vessel also list HF Mexico as the commercial operators and managers, and the HF Offshore website holds out to the public the Vessel as the property of all the HF entities together, including HF Mexico. Attached hereto as Exhibit 9 is a true and correct printout from HF Offshore's website.

64. Upon information and belief, HF Towing did not, and HF Hunter does not now, receive any independent benefit or revenues from their titular ownership of the Vessel.

65. HF Mexico caused the incorporation of HF Hunter as a subsidiary single asset holding company solely for the purposes of acting as the registered owner of the Vessel in an effort to conceal and insulate the Vessel from the enforcement of any awards for monetary damages against it resulting from its breach of the Charter, which breach had already occurred.

66. Upon information and belief, HF Mexico controls all decision-making for defendants HF Towing and HF Hunter, with HF Hunter having no independent means or independent officers or directors to make decisions for or act independently in their own corporate interest. At all material times, HF Mexico, controls the day-to-day affairs of HF Hunter and the Vessel, and HF Mexico is the actual owner of the Vessel and operates and controls HF Towing and HF Hunter as shell corporations for the purposes of shielding the Vessel from Plaintiff and its other creditors.

67. HF Mexico's disregard of the corporate form and complete dominion and control of HF Towing and HF Hunter, and HF Mexico's use of HF Towing and HF Hunter to perpetrate fraud, wrongdoing and injustice upon Plaintiff, warrants the treating of the Defendants as a single entity and alter egos of each other.

68. Defendant HF Mexico and defendants HF Hunter and HF Towing are alter-egos of each other, and accordingly defendants HF Hunter and HF Towing are equally liable for Plaintiff's maritime claims asserted against HF Mexico in the London Arbitration, and the First and Second Partial Final Awards – as well as any further arbitration award issued by the London arbitration – are equally enforceable against defendants HF Towing and HF Hunter.

## APPLICATION FOR RULE B ATTACHMENT

69. Plaintiff repeats and re-states each of the allegations set forth in Paragraphs 1-67 above with the same force and effect as if set forth at length herein.

70. As established by the Declaration of Brian J. Lindsey dated March 30, 2025, filed herewith, defendants HF Mexico, HF Towing, and HF Hunter cannot be found within this District within the meaning of Supplemental Rule B.

71. Defendants have, or will have during the pendency of this action, within the District tangible property. More particularly, the *M/V HF HUNTER* (IMO 929506) (the Vessel) is or will soon be either within the Port of Fourchon, Lafourche Parish, City, Louisiana.

72. Owners seek an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B, attaching, *inter alia*, any property of the Defendants, including the Vessel *M/V HF HUNTER*, as well as property held on the *M/V HF HUNTER* belonging to the Defendants, for the purpose of obtaining security for Plaintiff's maritime claims pending in the London Arbitration, and in aid of enforcing the First and Second Partial Final Awards issued in that Arbitration, in an amount up to $12,335,327.52 (inclusive of the value of Plaintiff's remaining claims against HF Mexico to be decided in the London Arbitration).

**PRAYER FOR RELIEF**

Wherefore, premises considered, Plaintiff prays:

73. That process in due form of law according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants be cited to appear and answer the allegations of the Verified Complaint;

74. That because the Defendants cannot be found within this District pursuant to Supplemental Rule B, all of the assets of the Defendants presently within the District, or assets expected in the District during the pendency of this action, including, but not limited to, the Vessel *M/V HF HUNTER*, be attached and garnished in an amount sufficient to answer Plaintiff's claim and satisfy the First Partial Final Award and Second Partial Final Award, as well as any potential future awards issued against HF Mexico in the London Arbitration, currently calculated in the amount of $12,335,327.52;

75. That this Court retain jurisdiction to confirm and enforce any arbitration award issued or to be issued in the London Arbitration in favor of Plaintiff and against HF Mexico and issue judgment against HF Mexico thereon;

76. That any judgment issued against HF Mexico on the awards issued in the London Arbitration be likewise applied against HF Hunter and HF Towing through veil-piercing, alter ego, common ownership, or similar theory;

77. That judgment be entered against each of the Defendants in the sum of presently estimated as $12,335,327.52, and that the proceeds of the assets attached be applied in satisfaction thereof; and

78. That this Court grant Owners such other and further relief which it may deem just and proper.

Date: May 15, 2025.

Respectfully submitted,

Stephen C. Hanemann (#28069)
**KEAN MILLER LLP**
Bank Plus Tower
909 Poydras St., Suite 3600
New Orleans, Louisiana 70112
Tel: (504) 585-3050
Stephen.Hanemann@KeanMiller.com

AND

Brian Lindsey (#35887)
**KEAN MILLER LLP**
600 Jefferson Street, Suite 1101
Lafayette, Louisiana 70501
Tel: (337) 422-3655
Brian.Lindsey@KeanMiller.com

*Attorneys for Plaintiff*
*Atlantic Oceanic LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Atlantic Oceanic LLC,<br>Plaintiff,<br>vs<br>HF Offshore Services Mexico SAPI de CV,<br>HF Hunter Shipping PtE. Ltd., and<br>HF Offshore Towing SAPI de CV,<br>Defendants. | C.A. No. |

**VERIFICATION OF COMPLAINT**

I, Clair Ann Greenhalgh to hereby attest:

1. I am the sole member and president of Atlantic Oceanic, LLC, the plaintiff in the above-captioned matter.
2. I have read the foregoing Verified Complaint and am familiar with its contents.
3. The statements contained therein are true and correct to the best of my knowledge, information, and belief.
4. I make this declaration in accordance with 28 U.S.C. § 1746, and I understand that it has the same legal force and effect as an affidavit sworn before a notary public.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: May 9, 2025
At: London, United Kingdom

Signature: CGreenhalgh
Clair Ann Greenhalgh