**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **ATLANTIC OCEANIC, LLC,** | ) | **CIVIL ACTION NO. 2:25-cv-00974** |
| | ) | |
| **v.** | ) | **SEC. "D"    MAG. (3)** |
| | ) | |
| **HF OFFSHORE SERVICES MEXICO** | ) | **JUDGE WENDY B. VITTER** |
| **SAPI DE CV, HF HUNTER SHIPPING** | ) | |
| **PTE. LTD., AND HF OFFSHORE** | ) | **MAG. EVA J. DOSSIER** |
| **TOWING SAPI DE CV** | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT**
**OF MOTION TO VACATE MARITIME ATTACHMENT**

Plaintiff Atlantic Oceanic LLC ("Plaintiff") filed this action misusing the Court's jurisdiction to hear admiralty and maritime law claims so as to pursue facially groundless alter ego liability against Defendants. Defendant HF Hunter Shipping Pte. Ltd. ("HF Hunter") makes a limited appearance pursuant to Federal Rules Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims E(8), and with a full reservation of rights, to ask that this Court vacate the attachment and garnishment entered in this matter [ECF No. 9, the "Attachment Order"], dismiss this action in its entirety, and any other relief this Court deems just and proper.[1]

**INTRODUCTION**

Plaintiff's Verified Complaint (the "Complaint") is built upon little more than "information and belief" which lacks truthful information or any real basis behind the "belief." HF Hunter is its own company, and it—not HF Services Mexico—owns the *M/V HF Hunter* (the "Hunter Vessel"). Despite swearing to the contrary in its Complaint, Plaintiff's claims about the Hunter

---

[1] HF Hunter is specially appearing in this action solely and exclusively for purposes of challenging the attachment of its vessel and its appearance should not be deemed a waiver of any objections or defenses, including as to service and jurisdiction. *See* Fed. R. Civ. P. Supp. R. E(8).

Vessel's ownership are utterly false, and demonstrably so based on public records available to Plaintiff when it filed this action. At bottom, Plaintiff seeks to enforce arbitration awards against a non-party to that arbitration—impounding its valuable property—based solely on fact-deficient innuendo that entirely fails to meet the standard required in this Circuit to plead or prove alter ego liability. Plaintiff cannot attach the Hunter Vessel on the basis of these facially false, deficient allegations. As such, this Court should vacate the attachment of the Hunter Vessel.

## STATEMENT OF FACTS

### A.    Establishment of HF Hunter

As explained in the attached declaration of Heiko Felderhoff, an HF Hunter director, HF Hunter is a private, limited liability corporate entity registered in Singapore, which was established on July 24, 2024.[2]  Felderhoff Decl. ¶ 2, Ex. 1 to Felderhoff Decl. HF Hunter was established as a special-purpose company to buy and operate a single vessel, the *M/V HF Hunter*. Felderhoff Decl. ¶ 2, Ex. 2 to Felderhoff Decl.

Mr. Felderhoff is an indirect minority owner of the company. Specifically, he has an interest of approximately 37% of HF Hunter through HF Offshore Towing S.A.P.I. de C.V. ("HF Towing"). Felderhoff Decl. ¶ 3. The remaining 63% of HF Hunter is owned—and has been owned since the company was established—by a group of independent individuals and entities. Felderhoff Decl. ¶ 3, Ex. 1 to Felderhoff Decl. As reflected in Exhibit 1 to Mr. Felderhoff's declaration, the ownership of HF Hunter is and always has been publicly available in the Singaporean registry of companies.

---

[2] The Declaration of Heiko Felderoff is filed contemporaneously with this motion ("Felderhoff Decl."). The statements contained in the declaration are supported by documentary evidence, labeled Exhibits 1-10, which we have also referenced in this motion for ease of reference.

B.    <u>The Hunter Vessel and Its Current Status</u>

On June 26, 2024, Seabulk Atlantic LLC entered into an agreement ("MOA") with HF Towing to buy a vessel named *M/V Seabulk South Atlantic* (later renamed the *M/V HF Hunter*, to which the declaration and this motion refer to as the Hunter Vessel, for ease of reference). Felderhoff Decl. ¶ 4, Ex 3 to Felderhoff Decl. Seabulk Atlantic LLC is a subsidiary of Seacor Marine Holdings, Inc. ("Seacor"), a large, well-known, and publicly-traded shipping company. Felderhoff Decl. ¶ 4. As stated above, HF Hunter was established in July 2024. Once that occurred, the MOA was amended to switch buyers from HF Towing to HF Hunter. Felderhoff Decl. ¶ 5, Exs. 4-5 to Felderhoff Decl.

HF Hunter took delivery of the Hunter Vessel on August 28, 2024, and immediately began repairing it, which took from August 2024 to March 2025. Felderhoff Decl. ¶ 6, Ex. 6 to Felderhoff Decl. In March 2025, as the Hunter Vessel was getting ready to start providing services, HF Hunter appointed HF Towing as the Hunter Vessel's manager. Felderhoff Decl. ¶ 7, Ex. 7 to Felderhoff Decl. In early March 2025, the Hunter Vessel began travelling to the United States pursuant to a towing contract. Felderhoff Decl. ¶ 16. This would have been its first contract since completing all repairs. Felderhoff Decl. ¶ 16. HF Hunter learned of an action Plaintiff filed in the Southern District of Mississippi attempting to improperly attach the Hunter Vessel. Felderhoff Decl. ¶ 16, 17. HF Hunter stayed out of U.S. waters, and Plaintiff dismissed the case. Felderhoff Decl. ¶ 21.[3] HF Hunter was now attempting for a second time to perform services in U.S. waters, but Plaintiff's

---

[3] This is not the only case Plaintiff filed seeking to attach the Hunter Vessel. Plaintiff also filed (and promptly dismissed) a case in the Eastern District of Texas. Prior to this action, HF Hunter also proactively sought to resolve Plaintiff's alter ego claims in Delaware. Felderhoff Decl. ¶¶ 30-32.

attachment in the instant action has prevented that. Felderhoff Decl. ¶ 32. Parenthetically, HF Hunter reserves its rights against Plaintiff for the consequences of this wrongful attachment.

### C.    HF Hunter Has No Relationship With HF Services Mexico

HF Offshore Services Mexico S.A.P.I. de C.V. ("HF Services Mexico") is an entirely separate entity from HF Hunter and HF Towing, with no involvement in the purchase of the Hunter Vessel. Felderhoff Decl. ¶ 8, *see* Exs. 3-4 to Felderhoff Decl. Indeed, HF Services Mexico was never a party to any of the contracts or amendments for the purchase of the Hunter Vessel. Felderhoff Decl. ¶¶ 8, 9, *see* Exs. 3-4 to Felderhoff Decl.

Furthermore, HF Hunter has never been a shareholder of, or had any ownership interest in, HF Services Mexico. Felderhoff Decl. ¶ 9. Moreover, none of the other 63% shareholders of HF Hunter have any ownership interest in HF Services Mexico. Felderhoff Decl. ¶ 9. Conversely, as is publicly available in the Singaporean registry of corporations, HF Services Mexico has never had any ownership interest in HF Hunter. Felderhoff Decl. ¶ 10, Ex. 1 to Felderhoff Decl.

### D.    HF Hunter Has No Relationship With Atlantic Oceanic or With the Underlying Dispute

According to the Verified Complaint, this case arises from a purported breach of a charter hire contract (the "Charter Contract") between Atlantic Oceanic UK Ltd. ("Atlantic Oceanic UK") and HF Services Mexico for the charter of the *M/V Atlantic Tonjer* vessel. Compl. ¶ 12.

Also, according to the Verified Complaint, HF Services Mexico's purported breaches of the Charter Contract resulted in Plaintiff commencing an arbitration before the London Maritime Arbitrators Association (the "London Arbitration"). Compl. ¶ 25. Notably, HF Hunter was established in July 2024, well before the London Arbitration was commenced. Felderhoff Decl. ¶ 2, Ex. 1 to Felderhoff Decl. The Verified Complaint alleges that the arbitration has resulted in two awards in favor of Plaintiff and against HF Services Mexico (the "London Arbitration Awards").

4

Compl. ¶¶ 29, 34. Notably, nothing in the Complaint or in the resulting London Arbitration Awards that were supposedly issued in the London Arbitration explains why or how Plaintiff (an LLC entity) acted as claimant in the arbitration and now acts as Plaintiff in this action, despite that the entity that signed the Charter Contract is Atlantic Oceanic UK. *See* Compl. Exs. 1-3; Felderhoff Decl. ¶ 11.

More importantly, as reflected in the documents that Plaintiff filed in this action, neither the Hunter Vessel nor HF Hunter are even mentioned in the Charter Contract between Atlantic Oceanic UK and HF Services Mexico. *See* Compl. Ex. 1; Felderhoff Decl. ¶ 12. Furthermore, HF Hunter has never had a relationship with Atlantic Oceanic UK or Atlantic Oceanic LLC. Felderhoff Decl. ¶ 11.

Similarly, as reflected in the text of the London Arbitration Awards, neither HF Hunter nor the Hunter Vessel were even mentioned during the arbitration. *See* Compl. Ex. 2, Ex. 3; Felderhoff Decl. ¶ 13. Indeed, Plaintiff never even attempted to make HF Hunter part of the arbitration or made any arguments that HF Hunter was a third-party bound by or subject to the Charter Contract's arbitration clause, or that it should otherwise be treated as an alter ego of HF Services Mexico. *See* Compl. Ex. 2, Ex. 3; Felderhoff Decl. ¶ 14, Exs. 9, 10 to Felderhoff Decl.

### E.    HF Hunter is Not a Party in the Texas Action or the Maltese Action

Plaintiff alleges in its Verified Complaint that it has commenced an action in Texas seeking to enforce the London Arbitration Awards against HF Services Mexico ("Texas Action").[4] Compl. ¶ 50. HF Hunter is neither a party to, nor named in the Texas Action, nor has it been served with any documents relating to the Texas Action. Felderhoff Decl. ¶ 12.

---

[4] *Atlantic Oceanic, LLC v. HF Offshore Service Mexico SAPI de CV*, Case No. 4:25-cv-00829 (S.D. Texas – Houston Division), filed February 25, 2025.

Similarly, Plaintiff alleges in its Verified Complaint that it has commenced an action in Malta. Compl. ¶ 47. HF Hunter is neither a party to, nor named in the Maltese action, nor has it been served with any documents relating to the Maltese action. Felderhoff Decl. ¶ 16.

## LEGAL STANDARDS

"Maritime attachment is a distinctive admiralty remedy that was a part of American jurisprudence at the time the Constitution was adopted." 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 21:3 (6th ed. Nov. 2019) (Codified in Supplemental Admiralty and Maritime Claims Rule B(1)). Rule B "allows a district court to take jurisdiction over a defendant in an admiralty or maritime action by attaching property of the defendant." *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 244 (5th Cir. 2016) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 421 (5th Cir. 2001)). The dual purposes of this power are "to secure a respondent's appearance and to assure satisfaction in case the suit is successful." *Id*. (quoting *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 693 (1950)). Once an attachment order has been issued, Rule E(4)(f) provides the procedure for a defendant or "any other person claiming an interest" to seek release from the attachment. Fed. R. Civ. P. Supp. R. E(4)(f).

To support attachment of a defendant's "tangible or intangible personal property," a plaintiff must show that: "(1) [it] has a valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law [prohibiting] the attachment." *Austral Asia Pte. Ltd. v. SE Shipping Lines Pte. Ltd.,* No. CIV.A. 12-1600, 2012 WL 2567149, at *1 (E.D. La. July 2, 2012) (citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), abrogated on other grounds by *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte*

*Ltd.*, 585 F.3d 58, 61 (2d Cir. 2009)); Schoenbaum, *supra*, at § 21:3. Here, Plaintiff fails the first prong of the test: it has no facially valid admiralty claim against HF Hunter.

Pursuant to Rule E(4)(f), once a defendant moves to vacate an attachment, "[t]he attachment must be vacated if the plaintiff fails to sustain his burden of showing that the requirements of Rules B and E are satisfied." *Austral Asia Pte. Ltd.*, 2012 WL 2567149, at *1 (citing *Aqua Stoli Shipping Ltd.*, 460 F.3d at 445; *see also* Fed. R. Civ. P. Supp. R. E(4)(f) ("Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."). The plaintiff bears the burden to sustain the attachment. *A. Coker & Co., LTD. v. Nat'l Shipping Agency Corp., et al.*, Civil Action No. 99–1440, 1999 WL 311941, *1 (E.D. La. May 17, 1999). Critically, "superficial compliance" with Rule B is not enough to sustain the attachment; "[r]ather, the attaching party must present sufficient evidence to show probable cause for the attachment." *Austral Asia Pte. Ltd.*., 2012 WL 2567149, at *1.

## **ARGUMENT**

### I.    **This Suit Must Be Dismissed As Duplicative of the Texas Action.**

As an initial matter, this lawsuit must still be dismissed because it is duplicative of the Texas Action which Plaintiff already filed. As Plaintiff itself admits, it is seeking to "recognize, confirm, and enforce" the London Arbitration Awards in the U.S. District Court for the Southern District of Texas. *See* Complaint ¶ 50 (identifying the Texas Action as a related case); n. 3, *supra*. Yet, in this case, it is seeking to enforce the exact same awards. *See id.* ¶ 7 (asserting that the awards are "also enforceable against defendants HF Towing and HF Hunter"), ¶ 75 (asking the Court to "retain jurisdiction to confirm and enforce any arbitration award issued or to be issued in

the London Arbitration in favor of Plaintiff and against HF [Services] Mexico . . . ."). Plaintiff cannot maintain these two duplicative suits in two separate jurisdictions.

"The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *West Gulf Maritime Assn. v. ILA Deep Sea Local 24, etc., et al.*, 751 F.2d 721, 728 (5th Cir. 1985) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180 (1952)). When two lawsuits are filed in separate federal courts, it is not necessary that the issues be identical to allow one court to decide the action; there must only be "substantial overlap between the two suits." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). The concern is to "avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of the issues that call for a uniform result." *West Gulf*, 751 F.2d at 729. Thus, "a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court." *Id.* Here, this Court should dismiss this case so that the overlapping issues can be decided in the Texas jurisdiction that Plaintiff itself already chose.

There is no question that Plaintiff's claims in the Texas Action and those here substantially overlap (at a minimum). Plaintiff is attempting to enforce the London Arbitration Awards. Thus, the merits of the underlying Awards—including whether the Awards were valid (due to the absence of service) or proper (due to awards being made in contravention of law)—will be litigated fully in the Texas Action. Plaintiff could have added HF Hunter and HF Towing as parties to the Texas Action, seeking recovery under an alter ego theory as it is doing here, but for some reason, it chose not to. Now, by Plaintiff's initiation of this action, it is seeking to adjudicate the merits of the London Arbitration Awards in *two* courts (perhaps as security in case things do not go its way

in Texas). Were this Court to keep this case, the risk of duplicated or inconsistent judgments would become a certainty. Moreover, Plaintiff's institution of a lawsuit in this Court necessarily leads to the very "piecemeal" litigation the Supreme Court and Fifth Circuit forbid: the confirmation and enforceability of the London Arbitration Awards would be ruled on in Texas while Plaintiff's alter ego liability theories of liability would be litigated here. Nothing countenances this result. *See Sutter Corp. v. P & P Indus., Inc.* 125 F.3d 914, 920 (5th Cir. 1997) (holding that two actions concerning the same arbitration award could not be maintained). Thus, this Court should dismiss this case, or at the very least transfer it to the Southern District of Texas, so that all issues relating to the enforcement of the London Arbitration Awards—including whether Defendants can be made liable under an alter ego theory—can be heard in the jurisdiction that Plaintiff itself first chose.

## II.     Plaintiff Has Failed to Make A *Prima Facie* Showing That HF Hunter Is An Alter Ego of HF Services Mexico.

Putting aside the improper jurisdiction for Plaintiff's alter ego claims against HF Hunter, Plaintiff wrongly attempts to attach the Hunter Vessel on the premise that HF Hunter is supposedly an "alter ego" of HF Services Mexico and, therefore, should be liable for the London Arbitration Awards against HF Services Mexico. Plaintiff is grasping at straws. Plaintiff's allegations that HF Hunter is an alter ego of HF Services Mexico are demonstrably false, and Plaintiff does not even come close to pleading the elements for making a third-party pay for arbitration awards issued in the course of an arbitration to which it was not a party.

If Plaintiff truly believed that HF Hunter is an alter ego of HF Services Mexico, it would have at a minimum made allegations against HF Hunter in the London Arbitration or attempted to make HF Hunter a respondent in the London Arbitration. And, similarly, Plaintiff did not make any allegations against HF Hunter in the Texas Action or add it as a defendant. Plaintiff's various

recent attachment actions—this is the *third* attempt against HF Hunter—are Plaintiff's first attempts since it was supposedly injured by HF Services Mexico that Plaintiff has attempted to make any allegations against HF Hunter.

***The Alter Ego Allegations are False***. Plaintiff's Complaint is riddled with demonstrable falsehoods, such that it has not made even a *prima facie* showing of alter ego liability. Plaintiff attempts to weave a sordid story based on innuendos and false allegations in an effort to claim that HF Hunter and HF Services Mexico are one and the same and that the Hunter Vessel (unquestionably owned by HF Hunter) is somehow owned by HF Services Mexico. *See* Complaint ¶¶ 39-46.

For instance, Plaintiff claims that HF Services Mexico purchased the Hunter Vessel from Seabulk. *See id.* ¶ 41. This is completely false: HF Services Mexico did not participate in any way in the purchase of the Hunter Vessel. *See* Felderhoff Decl. ¶ 8, Exs. 3-5. Not surprisingly, this allegation in the Complaint does not cite to any source or provide a single supporting document.

Plaintiff also claims that HF Services Mexico "used" HF Towing and other entities to transfer ownership of the Hunter Vessel. *See, e.g.*, Complaint ¶¶ 42, 44, 55, and 57. This, too, is false on its face. HF Services Mexico never had any ownership interest in the Hunter Vessel, nor was it a party to the transaction between HF Hunter and Seabulk. Here, again, the Complaint fails to provide any support for its asserted falsehoods.

Further, HF Services Mexico did not "use" HF Hunter for anything. HF Services Mexico has no ability to control or direct HF Hunter to do anything because HF Services Mexico is not an owner of and has never had any ownership interest in HF Hunter. *See* Felderhoff Decl. ¶¶ 9, 10.

Plaintiff also alleges or implies that the Hunter Vessel is subject to the two London Arbitration Awards. *See, e.g.*, Complaint ¶ 13. Yet, and as acknowledged in the Complaint, neither

HF Hunter nor the Hunter Vessel appear to have even been mentioned in the London Arbitration, and they appear nowhere in the text of the Awards. *See id.*

The alter ego allegations in Plaintiff's Complaint are based largely on patently false allegations whose falsity was apparent when Plaintiff filed this action. Without these false allegations, which the Court should not consider, Plaintiff fails to make any showing of alter ego liability.

***Plaintiff Fails to Plead Alter Ego Liability for Award Enforcement***. Even if the Court looked past the false claims alleged in Plaintiff's Complaint, it is clear that Plaintiff has failed to allege sufficient facts to demonstrate alter ego at the pleading stage. In this Circuit, courts look to the totality of circumstances to determine whether one corporation is the "alter ego" of the other such that the "corporate identity is merely a sham, i.e. it does not exist independent of its controlling shareholder and that it was established for no reasonable business purpose or for fraudulent purposes." *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000). In so doing, courts look to a non-exhaustive list of factors, including: (1) the parent and subsidiary's common stock ownership; (2) common directors or officers; (3) common business departments; (4) whether the parent and subsidiary file consolidated financial statements; (5) whether the parent finances the subsidiary; (6) whether the parent caused the incorporation of the subsidiary; (7) whether the subsidiary operated with grossly inadequate capital; (8) whether the parent pays the salaries and other expenses of the subsidiary; (9) whether the subsidiary receives no business except that given by the parent; (10) whether the parent uses the subsidiary's property as its own; (11) whether the daily operations of the two corporations are kept separate; and (12) whether the subsidiary does not observe corporate formalities. *See id.* at 284 n.2 (citing *Century Hotels v. United States*, 952 F.2d 107, 110 n.5 (5th Cir. 1992)).

More importantly, a court will not enforce arbitration awards against a purported third-party alter ego except in rare, exceptional cases where "(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006).

The strong assumption of corporate separateness may only be overcome by "clear evidence 'of one corporation asserting sufficient control' over the other" such that one corporation is the alter ego of the other. *Melson v. Vista World Inc. and Associates*, C.A. No. 12-135, 2012 WL 6002680, at *5 (E.D. La. Nov. 30, 2012) (quoting *Dickson Marine Inc. v. Panalpina Inc.*, 179 F.3d 331, 338 (5th Cir. 1999). Indeed, "[t]o state a prima facie claim for alter ego liability, plaintiffs must make specific factual allegations from which alter ego status can be inferred; conclusory allegations are insufficient." *Swaidan Trading Co., LLC v. Dileton Mar. S.A.*, No. CV 18-994, 2018 WL 1791155, at *9 (E.D. La. Apr. 16, 2018) (vacating Rule B attachment for failure to support alter ego allegations).

Here, though Plaintiff makes numerous assertions—mostly "upon information and belief"—as to HF Hunter and HF Services Mexico's relationship, they do not rise to the level of "alter ego" liability. There is not a single allegation in the Complaint, let alone evidence, that HF Hunter exercised complete control over HF Services Mexico with respect to the "transaction at issue" (i.e., the Charter Contract) or that such control was used to commit fraud or injure any Plaintiff. Plaintiff has not provided any "clear evidence" showing anything that resembles alter ego control.

Indeed, virtually all of Plaintiff's allegations as to the specific factors relevant in the Fifth Circuit for alter ego liability are pleaded in rote fashion and "upon information and belief." *See*

Complaint ¶ 59 (allegations about common stock, common directors/officers), ¶ 60 (no employees, no capital, no independent business operations), ¶ 62 (no independent income), ¶ 64 (no independent benefit of revenues received from Vessel), ¶ 66 (control of decision-making). Most of what remains are pure legal conclusions. *See id.* ¶¶ 58, 67. As such, it is clear that Plaintiff is grasping for whatever "deep pocket" it thinks it can find and is simply abusing this process in an attempt to find one. Allegations of alter ego liability made solely "upon information and belief" are not enough, as a matter of law, to plead alter ego liability. *See, e.g.*, *Ameresco Solar, LLC v. Sader,* No. CIV.A. 14-2890, 2015 WL 3952771, at *5 (E.D. La. June 29, 2015) (finding insufficient alter ego allegations made "upon information and belief"); *Burback v. Oblon*, C.A. No. 4:20-CV-946, 2021 WL 4477607, at *11 (E.D. Tex. Sep. 30, 2021) (dismissing alter ego claim where Plaintiff merely recited alter ego factors "upon information and belief" "without providing any specific facts demonstrating a plausible basis for alter ego liability"); *Braum v. Time Cent.*, 2010 U.S. Dist. LEXIS 163534, at *11 (W.D. Tex. Nov. 22, 2010) (dismissing Plaintiff's alter ego theory pleaded only "upon information and belief").

***The Complaint Fails to Meet the Pleading Particularity Requirement***. Rule E(2)(a) requires Plaintiff to plead facts "with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a); *U.S. v. 2121 Kirby Drive*, 2007 U.S. Dist. LEXIS 83822, at *9-10 (S.D. Tex. Nov. 13, 2007) (noting that Rule E(2)(a) requires fact pleading beyond Rule 8(a)'s requirements). Moreover, Plaintiff's claims are alleged to be based on fraud committed by HF Hunter. The standard of proof of such claims of fraud are governed by Federal Rule of Civil Procedure 9(b) which requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Fed. R. Civ. P. 9(b). Under Fifth Circuit jurisprudence, when an alter ego relationship is claimed, as it is here, Plaintiff must <u>also</u> plead specific facts demonstrating that the relationship was somehow used to perpetuate a fraud or injustice. *Bridas S.A.P.I.C.*, 447 F.3d at 416; *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 692 (5th Cir. 1985) (in the Fifth Circuit, "fraud is an essential elements of an alter ego finding").

Plaintiff does not meet Rule E(2)(a)'s or Rule 9(b)'s heightened pleading standard by its unfounded and vague allegations. It merely presents a self-serving spin, inherently speculative, lacking foundation and credibility. *See Space Shipping Ltd. v. St Shipping & Transp. PTE Ltd.*, 2017 U.S. Dist. LEXIS 173593 at *5 (E.D. La. Oct. 19, 2017); *Shadix-Marasco v. Austin Reg'l Clinic P.A.*, No. A09-CA-891 LY, 2010 U.S. Dist. LEXIS 53135, 2010 WL 2232804, at *6 (W.D. Tex. June 1, 2010) ("[b]ecause fraud is an element of the alter ego doctrine, a plaintiff pleading alter ego must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which the Fifth Circuit interprets 'strictly'") (citing *Bridas S.A.P.I. C.*, 447 F.3d at 416.)

### III.    <u>The London Arbitration Awards are Unenforceable in the United States</u>.

Even if the Court could get past the gross deficiencies in Plaintiff's allegations, the London Arbitration Awards that Plaintiff is purportedly trying to enforce and collect against HF Hunter appear to be entirely unenforceable in the United States.

Under the New York Convention (the "NYC"), a recipient of a foreign arbitral award may seek enforcement of the award in U.S. courts. *See* 9 U.S.C, §§ 201-208 (codifying the NYC into Federal Arbitration Act); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir. 2004). Courts of the country in which the award was made exercise primary jurisdiction over the award; courts of countries who are signatories to the NYC exercise secondary jurisdiction. *Gulf Petro Trading Company, Inc. v. Nigerian Nat. Petroleum*

*Corp.*, 512 F.3d 742, 746 (5th Cir. 2008). While primary jurisdiction courts may exercise all potential grounds for relief from an arbitral award under their domestic laws, secondary jurisdiction courts may still refuse to recognize and enforce a foreign arbitral award under the provisions of Article V of the NYC. *See id.* at 746-47. Here, the London Arbitration Awards are unenforceable.

### a. Plaintiff Did Not Properly Serve HF Services Mexico.

Nothing in Plaintiff's Complaint or in anything else filed in this action or the Texas Action suggests that Plaintiff properly served the claim in the London Arbitration on HF Services Mexico. In the absence of a showing of proper service on HF Services Mexico, the respondent in the arbitration, the London Arbitration Awards would be unenforceable in the United States.

A court may refuse to enforce a foreign arbitration award if the "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." NYC Art. V(1)(b). The foreign arbitration must "meet the minimal requirements of due process" to be worthy of enforcement in a federal court. *Karaha Bodas Co.*, 364 F.3d at 299 ("Article V(1)(b) essentially sanctions the application of the forum state's standards of due process, in this case, United States standards of due process." (citation and internal quotations omitted)). Proper notice of the action and an opportunity to be heard are fundamental components of due process. *See id.*

The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention") applies in all cases "where there is occasion to transmit a judicial or extra judicial document for service abroad." Hague Convention Art. 1; *Am. River Transp. Co. v. M/V BOW LION,* No. CIV.A. 03-1306, 2004 WL 764181, at *2 (E.D. La. Apr. 7, 2004). In short, the Hague Convention provides the methods for service on a foreign party

of a pending judicial or quasi-judicial action. *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 277 (2017). Mexico and the U.K. (and the United States)[5] have acceded to the Hague Convention, though Mexico has made several important reservations. Most critically for the present case, Mexico opposes the use within its territory of postal channels or other direct means of service as provided for in Article 10 of the Hague Convention. *See* Declaration of May 2011 by Mexico regarding the Hague Convention, at https://www.hcch.net/en/instruments/ conventions/status-table/notifications/?csid=412&disp=resdn; *Compass Bank v. Katz,* 287 F.R.D. 392, 396-97 (S.D. Tex. 2012) (noting that "when Mexico acceded to the Hague Convention, it filed its declarations objecting to all alternative channels of service under Article 10"). "Thus, service through Mexico's Central Authority is the exclusive method of service of process on parties in Mexico under the Hague Convention."[6]  *Compass Bank*, 287 F.R.D. at 397.

Plaintiff has not filed anything in this action or in the Texas Action suggesting that it properly served the arbitration claim on HF Services Mexico, *i.e.*, that it served HF Services Mexico in compliance with the Hague Convention. Plaintiff attempts to obscure its critical initial mistake by listing various methods it supposedly used to inform HF Services Mexico of the London Arbitration. *See* Complaint ¶ 28. But because none of the methods complied with the requirements of the Hague Convention as agreed to by Mexico—*i.e.*, Plaintiff did not send the documents to Mexico's Central Authority for service on HF Services Mexico—Plaintiff's attempts

---

[5] The Hague Convention is well entrenched in U.S. law and is cited in Federal Rule of Civil Procedure 4 as the authority on service in a foreign country. *See* Fed. R. Civ. P. 4 and associated Notes.

[6] The Hague Conference on Private International Law ("HCCH") maintains a website providing information on the Mexican Central Authority, along with other practical information for effectuating service within Mexico. *See* Mexico – Central Authority & practical information, at https://www.hcch.net/index.cfm?oldlang=en&act=authorities.details&aid=267.

to serve its arbitration claim on a Mexican entity are void. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 697 (1988). Consequently, Article V(1)(b) of the NYC permits this Court to refuse to enforce the award. *Karaha Bodas Co.*, 364 F.3d at 298.

### b. Plaintiff Has Not Made Any Showing Of Personal Jurisdiction For Enforcement Of The London Arbitration Awards.

A federal court must have personal jurisdiction over a defendant before it may enforce a foreign arbitral award. *See First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 748 (5th Cir. 2012), as revised (Jan. 17, 2013) ("[W]e hold, in accordance with the decision of every circuit to have considered this issue, that dismissal of a petition under the New York Convention for lack of personal jurisdiction is appropriate as a matter of constitutional due process."). While lack of personal jurisdiction does not appear in Article V of the NYC as grounds for a secondary court to deny enforcement of an award, "personal jurisdiction is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Id.* at 749 (cleaned up). Even in the maritime or international arbitration context, "[a] party's contacts with a forum must be sufficient for the party to 'reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "Even though the New York Convention does not list personal jurisdiction as a ground for denying enforcement, the Due Process Clause requires that a court dismiss an action, on motion, over which it has no personal jurisdiction." *Id.*

At its core, this is an action to enforce the London Arbitration Awards that Plaintiff purported to obtain against HF Services Mexico. The Complaint, however, lacks any allegation that HF Services Mexico is subject to the personal jurisdiction of any U.S. court. Nothing in Plaintiff's papers shows that HF Services Mexico is present anywhere in the United States. The charter negotiations, location of services planned or rendered, and arbitration itself all took place

17

outside the United States. Therefore, no U.S. court would have personal jurisdiction over HF Services Mexico to enforce against it the London Arbitration Awards.

### c. There Appear To Be Substantial Errors With The London Arbitration Awards That Would Render Them Unenforceable.

Under the Federal Arbitration Act (FAA), only parties to the arbitration agreement have standing to seek enforcement of an arbitration award. No such standing is conferred on parties not participating in arbitration. *See Psarianos v. Standard Marine, Ltd., Inc.*, 12 F.3d 461, 465 (5th Cir. 1994) (explaining that only parties to an arbitral award may challenge order enforcing award). The party to the charter is Atlantic Oceanic UK Ltd, but the Plaintiff in the instant action and in the London Arbitration is Atlantic Oceanic LLC.[7]  Thus, it is unclear how Plaintiff was properly a party to the London Arbitration in the first place or how it can purport to be the Plaintiff in this action to enforce the Awards, and Plaintiff includes no factual allegations explaining this facial deficiency. Thus, Plaintiff could not seek any order from this Court (or any other) pertaining to the London Arbitration Awards.[8]

## CONCLUSION

For the reasons explained above, this Court should vacate the Attachment Order, dismiss this case, and grant all other relief to HF Hunter as may be warranted.

---

[7] Neither Atlantic Oceanic UK Ltd nor Plaintiff (Atlantic Oceanic LLC) owns the *M/V Tonjer*, the vessel involved in the London Arbitration. Atlantic Ocean UK Ltd has filed a separate lawsuit against the owners of the *M/V Tonjer* in the Western District of Louisiana. *See Atlantic Oceanic UK Ltd v. Castle Ship Holdings Limited*, Case No. 6:25-cv-00182-JE-JPM (W.D. La). The *M/V Tonjer* is arrested in that action. *See id*. at ECF No. 11.

[8] There appear to be myriad other issues with the underlying London Arbitration itself. For example, the London Arbitration went beyond the damages allowed for in the contract, and against UK law, to award Plaintiff exorbitant consequential damages. As a fulsome recitation of these arguments showing that the London Arbitration Awards are a sham are unnecessary for this Court to vacate the Attachment Order and dismiss the Complaint, HF Hunter simply notes these issues to avoid any indication that it waives these arguments or agrees with the awards.

Respectfully submitted:

*/s/Miles P. Clements*
Miles P. Clements, T.A. (4184)
Joseph E. Lee III (26968)
Zachary J. Ardoin (37575)
Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone:      (504) 566-1311
Facsimile:      (504) 568-9130
E-Mail:         miles.clements@phelps.com
                josh.lee@phelps.com
                zachary.ardoin@phelps.com

Counsel for Defendant HF Hunter Shipping Pte. Ltd.